Mr. Fleming, ladies and gentlemen of the court, my name is Jeff Bach and I represent the plaintiff. James A. Fuller Jr. with my co-counsel, Jay Edmonds. I know you've had a chance to read the briefs that Mr. Edmonds and myself have filed, as well as Mr. Fleming's brief, so I will do my best to bring some new information to the court's attention. As you know, this case is before you on a grand summary judgment to the defendant by the trial court. Our Gosa v. Ford Motor Company First District case from 1999 that was cited in our brief indicates that in determining the presence of a genuine issue of material fact, the court must construe the evidence against the movement and liberally in favor of the opponent. Since this is such a fact-driven case, I wanted to highlight a few of the pertinent facts of the case. As you know, our client, James Fuller, a nine-year-old boy, was crossing Adams Street, which is a four-lane street in Peoria, Illinois, outside of the crosswalk with his 15-year-old brother and an 11-year-old girl at approximately 3 p.m. on August 4, 2005. For reference, at the place on Adams where the three youths chose to cross the street, the speed limit is 35 miles per hour. As the three youths proceeded into the street, they crossed the first two lanes and stopped in the middle of the street. Simultaneously, the defendant was approaching from the other direction, and as the plaintiff attempted to finish crossing the street, the defendant struck him. The impact occurred in the far right curbside lane. As we pointed out in our briefs, despite what the defendant would have you believe, there is some dispute as to how fast the defendant was traveling immediately before the accident. The plaintiff testified that he thought the defendant was traveling 35 to 45 miles per hour immediately before the accident. And another witness, Robert Wilson, testified that he believed the defendant's speed to be 30 to 40 miles per hour before the accident. The defendant testified that she was traveling 20 to 25 miles per hour immediately before the accident. So here we have our first material dispute of fact. The first allegation of negligence and the first allegation of negligence on the part of the defendant, which is that she was traveling too fast for the conditions in violation of 625 ILCS 511-601. As I indicated previously, as a party who is appealing the grant of summary judgment, all evidence must be construed liberally in favor of the plaintiff. So here we must assume that the plaintiff will testify that the defendant was traveling 45 miles per hour immediately before the accident. If she was traveling 45 miles per hour, then she was also speeding, but the allegation of traveling too fast for the conditions is more appropriate here when you factor in the presence of children in the street. And this is also where we run into the first problem with the grant of summary judgment. As you judges are well aware, for summary judgment to be granted, there must be no material facts in dispute, but there was conflicting testimony as to how fast the defendant was traveling. Now, defense counsel will certainly argue that the defendant's speed is not a material fact because the defendant was not negligent and that she did not preach any duty over the plaintiff. And in defense counsel's brief, he touches repeatedly on the duty of a pedestrian who is crossing outside of a crosswalk, which is to yield the right-of-way to all vehicles upon the roadway. However, as Tony versus Marziriegos, a First District case from 1988 that we cited in our brief indicates, a motorist must exercise greater care for the safety of children than he would for an adult, specifically because of the unpredictable nature of children. The court noted in Tony that, quote, even where a motorist was traveling at a speed below the speed limit and the child darted out in the traffic, a question of fact may exist, may, excuse me, may remain as to whether the motorist was traveling too fast for the conditions and failed to properly perform his duty of care towards the children in the vicinity, unquote. The defense attempts to distinguish between the Tony case and the case at par by pointing out the defendant testified that she maintained a lookout, saw the children, and slowed her vehicle down. Now, of those three statements, the only one that would be independently verifiable was that she slowed her vehicle down. But witnesses Robert Wilson and Robert Gonzalez both testified that neither saw the defendant slow down immediately before the accident. These were both disinterested witnesses who have no stake in this litigation. And the only testimony the defendant had to look at and observe the children comes from the defendant herself. Now, the defendant also testified that she saw the children but took her eyes off the children momentarily to look in her rearview mirror. This evidence also creates a material issue of fact and that a jury should be the one to determine if she breached her duty to keep a proper lookout by taking her eyes off the children. So, the evidence shows that either she didn't see the children and failed to keep a proper lookout or she did see the children and failed to slow down. On the other hand, as I'm sure defense counsel will point out, both witnesses indicated that they did not observe the defendant's eyes immediately before the accident so they cannot testify that she wasn't paying attention. But the fact that she didn't slow down is certainly indicative of someone who was either not keeping a proper lookout or failed to take proper precautions upon observing children in the roadway. So, the evidence construed liberally in favor of the plaintiff tends to show that the defendant was driving between 35 and 45 miles per hour immediately before the accident, which the plaintiff alleges was too fast for the conditions. And once again, construing the evidence liberally in favor of the plaintiff, the evidence shows that the defendant failed to slow down once she observed the children in the roadway. Meaning that she did not see the children and failed to keep a proper lookout or that she did see the children and failed to slow down. These three elements, excessive speed, failure to take proper precaution upon observing children in the area, and failure to keep a lookout, constitute the plaintiff's allegations and negations. And as Cates v. Kennard, a 1994 case from the 3rd District that was cited in our brief indicates, whether the plaintiff was traveling too fast for the conditions is ordinarily a question for the trier of fact. The Cates case also indicates that, quote, such factors such as conflicts in evidence, controverted facts, and credibility of witnesses are properly matters solely within the province of the jury, unquote. Additionally, one of the cases the defense cites under the unavoidable collision doctrine, pool versus central area recycling, a 2008 case from the 4th District, indicates that a court cannot make credibility determinations or weigh evidence. I will address the unavoidable collision doctrine momentarily, but now if I may turn to the absence of proximate cause the defendant alleges in her brief. As I'm sure you recall from reading the brief, proximate cause is usually a question for the finder of fact to consider. And it is well settled that proximate cause is established only when the defendant's conduct has shown reasonable certainty to have caused the plaintiff's injury. Defense counsel's brief, the defendant alleges there was nothing she could have done to prevent the accident short of not driving on Adams Street on the day in question or coming to a complete stop. This formulation completely ignores the evidence that she was traveling too fast immediately before the accident and that she failed to reduce her speed when she saw that there were children in the road or that she failed to keep a proper lookout and observe the children. As I indicated previously, the Tony case stands for the proposition that a motorist must exercise greater care for the safety of children than he would for an adult, specifically because of the unpredictable nature of children. Simply put, the witnesses to the case have indicated the defendant did not slow down at any point in time prior to the accident. Though the defendant testified that she was aware of the children and she kept a proper lookout, her failure to slow down indicates otherwise. Again, construing the evidence liberally in favor of the plaintiff, either the defendant did not see the children, meaning she failed to keep a proper lookout, or that she saw the children but failed to slow down. As defense counsel notes in his brief, the plaintiff is not blameless in this manner. As you are no doubt aware by now, the plaintiff was in fact crossing the street outside of a marked crosswalk. And the plaintiff struck the defendant's car in the front driver's side bumper and front driver's side wheel. However, returning to the proximate cause argument, if the defendant had reduced her speed and kept a proper lookout, then the accident would not have happened. Construing the evidence liberally in favor of the plaintiff, the defendant was the proximate cause of the plaintiff's injuries because she did not slow down and failed to keep a proper lookout. If I can address briefly the defense's attempt to shoehorn this case into the unavoidable collision doctrine. As the defendant correctly indicates, an unavoidable collision occurs when a motorist is confronted with a sudden swerve or action into his right of way under circumstances where the driver lacks sufficient time to take decisive action. What that formulation fails to mention is that the courts have only applied this doctrine to a collision between two vehicles, not a vehicle or pedestrian. Additionally, while a motorist might be able to presume that other drivers will obey the right of way, the Tony case indicates that special caution must be exercised by drivers in the presence of children. In other words, the doctrine of unavoidable collision does not apply to the situation because children are, by their nature, erratic and prone to do foolish things like running in front of cars. Additionally, the other cases of unavoidable collision have occurred when the defendant was on a preferential highway, not a city street. And in none of the cases the defendant cites was there an allegation that the at-fault driver was speeding or failed to slow down in the presence of children. So while I applaud the defense for their creative thinking, I am certain that the doctrine of unavoidable collision does not apply in this instance. In conclusion, this is a very fact-driven case as evidenced by the lack of cases that are directly on point with the issues involved. Although it took the plaintiff some time to frame the issues of this case properly, there are three allegations of negligence that constitute material issues of fact. The first is that the defendant's speed was too excessive given the conditions. The second is the defendant failed to take proper precautions upon observing children on the roadway. And the third is that she failed to keep a proper lookout as evidenced by her failure to slow down. As I have indicated previously, the evidence in this case with regard to defendant's speed immediately before the accident is in dispute. Construing the evidence liberally in favor of the plaintiff, the defendant was traveling between 30 and 45 miles per hour immediately before the accident. This dispute is certainly material to the case at bar as there is a drastic difference between the 45 miles per hour that is the upper estimate of the plaintiff's speed and the 20 to 25 miles per hour which is the defendant's estimate of her own speed. Keep in mind that the speed limit of the road in question was 35 miles per hour. If the defendant was traveling 45 miles per hour immediately before the accident, it should be obvious she was traveling too fast with the conditions immediately before the accident or certainly at least that a question of fact is present with regard to that. Additionally, the second disputed material fact is whether the defendant slowed down immediately before the accident. Construing the evidence liberally in favor of the plaintiff, two disinterested witnesses have testified that she did not slow down immediately before the accident. The defendant maintains that she did. Once again, this dispute is material to this case because the defendant had a duty to exercise proper precaution in the presence of children, whether they were in a crosswalk or not. And if she did not reduce her speed, that is a breach of her duty to take proper precautions in the presence of children or at the very least a question of material fact consists with regard to that issue. Didn't the plaintiff's brother who was with him say that she was slowed down? That he even thought she had a turn signal on and she had slowed down? I believe it does say that in the deposition, Your Honor. But that was at one point there was they were considering the possibility that she was turning the Hardee's restaurant. I'm speaking of the two other witnesses, obviously, who I mentioned, Robert Wilson and Robert Gonzalez, were both eyewitnesses to this accident, and they say she did not slow down. The defendant's failure to slow down in the presence of children also indicates that she failed to keep a proper lookout. Construing the evidence liberally in favor of the plaintiff, the testimony of the two eyewitnesses indicates the defendant did not keep a proper lookout. She failed to reduce her speed in the presence of children. I ask that you enter an order reversing and remanding this case back to the circuit court for a jury trial so that the proper findings of that can weigh in on these issues. Thank you. Thank you, Counsel. Counsel, you may proceed. Thank you, Your Honor. Counsel, and good afternoon. It's dishonorable court. The arguments from the plaintiff at Gallant is almost like a but-for argument. But for this vehicle being in its location and moving, and physically moving, there would not have been an accident, and frankly, that is not the standard. We submit that there are two grounds that this court can affirm the summary judgment entered by the trial court. And these are essentially the two questions you place before yourselves. Number one, is there any competent evidence on a material fact? Is there competent evidence on a material fact that should somehow prohibit the court entering judgment in favor of Ms. Gould? And the second question is, which is frankly independent of evidence of negligence or what the defendant is doing, independent of that is this issue of proximate cause. In our brief, we address it two ways, and the courts, the cases we've talked about, look at it. Some talk about proximate cause, and others apply this term unavoidable collision. But all those courts come to the same legal conclusion. Is there any proximate cause? Regardless of what the defendant is doing driving, should she have gone slower, should she have gone faster, should she have looked more, is there an absence of proximate cause? Let me tell you what I think. Have you ever seen a case dealing with a pedestrian or a child and a car collision that's going off on the proximate cause, unavoidable exit? We were not able to find one. We were not able to find one. All of the cases, and I think we've cited four or five to this court, have all been other vehicles entering the right of way. The principle is exactly the same. And frankly, Your Honors, this is the reason why we're here, and I think this is the reason why this is an absolutely proper case for summary judgment. And I want to point out something the counsel said, which is slightly incorrect, which I think he's trying to lead you into overturning this. And that is, in this case, we have the absolutely unique fact that the child ran into the side of the vehicle. The child traveled across. He's absolutely still. I'm sorry. The child is absolutely still. The evidence is clear on this. I'm not going to argue anything that is somewhat in dispute. I'm just going to talk about what's not in dispute. All of the children are stopped, and they are one width of a lane apart. And he runs, as he says, I even wrote down the page. I think it's page 64 of the record. The young boy says, I ran my fastest, my fastest. He crossed one lane of traffic, and he ran into the side of the vehicle. There is absolutely no evidence. It is not in dispute whatsoever. There's no evidence he hit the front bumper. There's no evidence he hit the front of the car. There's no evidence that he entered Tammy Gould's lane of traffic at some point in time in front of her vehicle. If he did, Your Honors, we'd have a different situation. Then you could talk about it. She's going too fast, going too slow, sees him up there. And you could talk about all the questions about maybe could she have done something to avoid a child that is in her lane of traffic ahead of her. And that's not what the case is here. That's not what the case is here at all. The physics of what you're talking about is based on how fast the kid is running and how fast the car is going. Correct. I mean, if you hit the front of the car or the side of the car or don't hit the car. And those are the relative speeds of the two forces. Yeah. And the other physical factor that comes into play there is the amount of time she has to do anything to avoid the accident. And when he's absolutely still and he runs sideways into the side of her car, what, if anything, could she have done to avoid this accident? He suggests speed, speed, speed. And when you listen to his argument, you get to the point of saying he has failed to travel at an appropriate speed. Judge Vestma, you brought this up in the summary judgment, but I don't think anybody printed the transcript of that for you folks. He's saying, what's the suggestion here? Should she have gone faster and somehow then he would miss her and he'd run behind her? The only other thing is for her to have come to a stop. And that is what the courts say, and that's what all these unavoidable collision cases say. That is not what we're going to require of drivers. The reason I ask you that question is because a dart-out case is always very tragic, and usually they deal with children, either running or on a bike or something of that nature. But normally they're not summary judgment matters, although they're very difficult for a plaintiff to ever succeed in front of a jury on. But that's not the question in this. This is about a summary judgment, whether or not, and really it's a question of cause and fact. That's right, because there's two causes, legal cause and cause and fact. And so it's a cause and fact. And usually a cause and fact question is usually a jury determination. Well, not if you can't, these unavoidable collisions say you look at legal cause. That's what I call the unavoidable collisions. But, again, I am not familiar with an unavoidable collision that deals with a pedestrian. They're dealing with other situations, not the dart-out situation. They're talking about something that appears suddenly into, and what they call it is they call it into the right-of-way, that appears suddenly into the right-of-way of the vehicle driver on the preferential roadway. And, actually, I don't think there's any question whatsoever that Tammy Gould traveling this way has the preference. She doesn't have to stop and yield to this pedestrian. As I say, in front of a jury or a fact finder, these are very difficult cases to ever succeed as a plaintiff. And that's not, obviously, what we're here to talk about. The only thing we're here to talk about is if there is any competent witness that could offer something indisputed on a material fact and, B, whether this case hits the unavoidable collision. There was evidence of the children present, children involved, right? She sees them the whole time. And she sees them the whole time. Now, counsel says, makes a point, well, she looked into her mirror for a second. Oh, you know, I guess I shouldn't really say this. If somebody got the bid, someone would keep looking around everywhere. But that's not the issue here for the summary judgment. The issue here is they're not moving when she looks. And then when she looks back, she sees the whole, what she calls the flash. She sees the child move into her side of her car. If, in fact, this would be a different case. If, in fact, she looked away and then she looked back and suddenly the child's in a different position, you could argue look out all you want then. You could argue look out. But in her look out, remember, he's still there. He's not moving. And then when she's looking, she sees the flash. Within a flash. And for her, there is, frankly, in this case, a split second or no time for her to react. We suggest to your honors that these cases are several. The Kuhl case was quite clear. In that case, they said a few seconds. If there is a few seconds to react, is that reasonable? Salo versus Singhurst, in that case, they said that there is not enough time. There's nothing the defendant could have done to avoid the impact. And you compare those to our case here. It is a flash, and it's a flash into the side of her vehicle. But, your honors, let me address what counsel is trying to lead you into is that there are questions of fact on some of these witnesses. And my statement is there is no competent evidence on these things they try to argue. I already addressed the look out, and I don't think there's any question about the look out. And her seeing the children at all times when they're stationary, and then she also sees the flash. She sees the child flash into the side of her vehicle. She's keeping a look out for the kids. She sees them. But what about speed? What about speed? And I think you need to look at these people's testimony, and they're all, I presented them all to the court in the summary judgment. Robert Gonzales. Robert Gonzales says, I don't know. I don't know, defendant, speed. I can't say 20, 25, 35. I can't say. The police officer says there's no evidence she's exceeding the speed limit whatsoever. Wilson. I think that's the witness they try to make something out of. You have to look at, because he comments about it about three times, and he says twice this. I can't say I don't know. When he's pushed to give an estimate, well, 30 to 40 in the end, his absolute last statement, he goes, really? I don't know. I don't know her speed. He also says she is not traveling at an excessive speed. That's what Wilson says, okay? So all those witnesses do not raise the question of material fact on speed. It's my submission to your honors that that is irrelevant when we look at the unavoidable collision, but there is no competent evidence from any of those criticizing, critical of her speed that could have avoided this accident. Now, let's look to the final witness that they try to make something out of, and that is this, the minor child plaintiff, who, remember, he's the one that runs the faxes. They say in their complaint, and they suggest it here today, that he's nine years old. Technically, he's two weeks away from his ninth birthday. He's eight years and 11 months. But let's say he's nine years old. He's two weeks away from it. If you want to call him nine, that's fine with me. He's a nine-year-old child, and his testimony in the record is he doesn't even say speed of miles per hour. Remember, this is a nine-year-old child. I don't think he's got the foundation to testify at all in the courtroom, and he would never offer a testimony as to speed. But he doesn't even say miles per hour. When someone asks him, remember, questioning an eight-year, 11-month-old child, I question him, and he goes, 45 to 35 miles. That's the only thing he says. He doesn't say anything about miles per hour. He doesn't provide any groundwork that he would know anything about speed of a vehicle. He uses that term, 45 to 35 miles. Who knows if he's talking about miles per hour, miles away, or if he has any concept whatsoever, which I suggest he does not, of miles per hour of a vehicle. And frankly, folks, those things are not enough to raise a question of fact under these circumstances where everyone else says no one says she's exceeding the speed limit. She's got her right of way, and the child, like a flash, moves 11 or 12 feet into the side of her vehicle. It fits squarely within these cases of unavoidable collision or as Marsh v. McNeil said, and we put a pretty long quote from there in our brief. In that case, the incident happened when the defendant's traveling 30 miles an hour, and 50 feet away something happens, which here it's much, much closer, 50 feet away. And the court said the sole cause, the sole cause of this incident occurring was the action of the car or whatever, the plane, entering the right of way of the vehicle driver. And in this case, it's quite clear, entered the side of the vehicle driver. So the same logic, Your Honor, I respectfully submit absolutely applies to this circumstance. I would not be arguing it to Your Honors if the child's in Ms. Gould's lane of traffic and she's approaching and she sees the child. That's a different circumstance. And Judge Speed, Judge Lookout, go ahead all you want to. This is a child who's stationary, not in her right of way, who has a flash, moves into her right of way, and it fits squarely within these absence of cause cases or unavoidable collision cases, whichever you look at. Is it your suggestion that every dart out case then is an unavoidable collision? Absolutely not, Your Honor. I mean, or it's an unavoidable collision unless it's in the front part of the car. I think that either front part of the car or the children or obstruction or whatever enters the right of way in front of them where the person has the ability to avoid it. What ability would this lady have to avoid someone coming into the side of her vehicle? I mean, that's the very question about dart out cases, isn't it? Dart into the side cases. There's dart out cases where someone jumps in front of you and how much time do you have? And could you have adjusted your speed as you approached? But this is into the side of the vehicle. There are dart out cases where they run into the side of the vehicle. There are no other cases that we have presented to, who found or that we put in our briefs that have anything to do with into the side of the vehicle. There aren't. Counselor, you have two minutes. And they've cited none. They've cited none as well. I guess I would submit to them. I'm not talking about appellate cases. I'm talking about trials. Well, as I think this court well knows, the facts of every case are unique to those cases, how much time, how much speed, and where is the person entering the right of way. And frankly, Your Honor, this is probably why we never see any into the side cases. What my client's car was moving along Adams Street, whether it's going 20, 25, or 35, as my client's vehicle is moving along Adams Street, it provides a condition for this child who admits he sees it. There's no question he sees it, and he runs, in his words, his fastest into the side of it. There is we don't see those cases, and I submit to you why, because my client is just a condition. Well, if she stopped dead, yeah, he could run into the side of it. If she's going 45 or 55, he could still run into the side of it in a flash. Whatever's running through the 9-year-old, 8- and 3-quarter-year-old child's mind, we're not here to judge. All we can judge is what the physical facts that occurred here might suggest. She went 15, 10 miles an hour. What happened there? Yeah, good question. But are we here to speculate? We can't say. No one here can say it would have avoided it the same as we couldn't say if she's going 50. Well, let's just say 40, okay? Let's say if she's going 40, would it have not happened? And you're not here to judge that when someone runs into the side of the vehicle into our right-of-way, giving time-wise no opportunity for Tammy Gould to avoid this. Short of, don't drive on Adams Street on Wednesday, August 6, 2005. Or, as others might suggest, every time you see kids on the side, stop. Stop your vehicle. Really, really, isn't it every time you see young kids, this isn't a 15-year-old, this is an 8- or 9-year-old, don't assume they're going to stay. I mean, that's really what she testified to. I saw him, I assumed he was not going to move. Isn't that the assumption? Because they were stopped. But it was the assumption she made after seeing a young child. And take all that as true, Your Honor. Take all that as true. Then you go to the next step. What is she supposed to do? What could she have physically done to avoid this accident? And even if she's going 10 or 15, can a child still run into the side? Does it flash inside your vehicle? There's no question. Five, yes, there's no question about it. And 50. And that's why our suggestion is this is the unique case that summary judgment absolutely, absolutely fits. And, you know, there's nobody here saying that he didn't see her. He thought he could walk across. Okay. Thank you. Thank you. He saw her clearly and she saw. Okay. Thank you. Thank you. Counsel, you may proceed. I just wanted to start by pointing out, Judge, as you correctly observed, that this case is not here on a decision from the trial court. It's here on summary judgment. And, frankly, I don't believe that if we had a decision in the trial court that we would be here at this point because I feel like the facts of this case are close enough that it would be difficult to disturb on appeal whatever the finder of fact considered. But, I mean, that kind of leads us into why summary judgment is not appropriate in this case. As Mr. Fleming pointed out, the approximate cause evidence, personally, I think it's more consistent with the fact that she was speeding and that the child hit the side of the car. I mean, to me, that would make sense in terms of if the car has already moved past because it's going so fast and the kid runs into it instead of hitting the front. I mean, we're almost arguing that if she had been going the speed limit on that day or going a little bit slower, which she should have been because the children were present in the area, then she would have hit the front of the car. The child would have hit the front of the car. I mean, from the evidence before us on the summary judgment motion, we had two witnesses, Robert Wilson and Robert Gonzalez, who both testified that she didn't slow down immediately before the accident. Now, Mr. Wilson also offered an estimate of her speed, which was 30 to 40 miles per hour, and certainly Mr. Fleming would be more than welcome to impeach his testimony in the trial court. But he still offered an estimate of the speed. Now, if she's going, we have the same witness who says she's going 30 to 40 miles per hour, and she doesn't slow down. Doesn't this, doesn't it all fit together why the kid hit the side of the car? If she had slowed down or been going slower to begin with, the kid would have hit the front of the car, and then, according to Mr. Fleming, we would have had a great case. So, you know, she's getting, I mean, it just seems that maybe she's, maybe she's getting away with going too fast because the child hit the side of the car. I also wanted to point out that this is not a typical dart out case because these children were in the middle of the street. This isn't some, oh, they're playing a ball game in the front yard and they run out in the middle. I mean, she testified she saw the children. As Your Honor pointed out, she testified she assumed they would stay in the middle. I mean, we know, we know from the case law that she's held to a greater standard of care in the presence of children precisely because you can't assume things like they'll stay in the middle because, as I said in my argument, children are erratic, children are foolish, children do foolish things like run out in front of cars, especially when you're 9 years old. As far as her speed goes, the only testimony we have with an estimate of speed that's below the speed limit is from the defendant herself. And, you know, the other really troubling part about this is that she wasn't looking at the children the entire time because she took her focus off the children by looking in the rearview mirror. I know Mr. Fleming tried to make light of that part, but certainly, I mean, as we just discussed, a greater standard of... I don't believe Mr. Fleming was making light of anything. I apologize, Your Honor. I believe Mr. Fleming pointed out, though, that are we going to just make people, you know, robots where you can only keep your eyes on the children and never take your eyes off them? I apologize. But it's just that by taking your eyes off the children, even for a second, to look in the mirror, we have to ask ourselves, does that create a factual issue as to whether or not she's violated the standard of care when it comes to seeing children in the roadway? I don't know the answer to that. And, frankly, I believe the only person that would be, or the only entity that would be the right entity to decide that would be a jury, a finder of fact to decide this. I mean, that's... Are you suggesting you could never grant a summary judgment in a child case? Your Honor, I'm not suggesting that. I'm only suggesting what I observed in the case before us. So I don't, I can't speak to what could happen in every case. As Mr. Fleming pointed out, the facts of each case are unique and different, so I don't think it would make any sense to have a blanket rule that says you could never have summary judgment in a child, third-out case. Counsel, you have one minute. Thank you. As we discussed, or as I've already discussed, the speed, the proper entity to figure out the speed is the finder of fact. The proper entity to figure out or to determine and assess the approximate cause of this accident is the finder of fact, and that, in this case, is a jury. As we discussed, that is what we are asking for, is a reverse and remand of the trial court with an order to have a jury trial in this matter. Thank you. The court will take this matter under advisement.